THOMPSON, J.
Charles and Bessie Herron (the “Her-rons” or “appellants”) appeal a final sum *186 mary judgment in favor of Frank and Donna Dastic (the “Dastics”) and H.P. and Hazel Wilkinson (the “Wilkinsons”) (collectively, “Appellees”). We reverse.
In October 1989, the Herrons commissioned a survey of a small parcel of land lying east of South Riverside Drive (“Riverside”), along the west bank of the Indian River in Edgewater, and abutting the end of New Hampshire Avenue (“New Hampshire”).[1] Mr. Herron had been told by a real estate agent that this piece of property “belonged to no one.” On November 13,1989, the Herrons made a return of the subject real property by proper legal description to the Property Appraiser for Volusia County, and submitted their Form for Return of Real Property in Attempt to Establish Adverse Possession Without Col- or of Title. The Herrons paid taxes on the land in 1990 and every year thereafter, through 1996. The Herrons’ goal was to acquire the land by adverse possession without color of title pursuant to Section 95.18, Florida Statutes.
When the dispute giving rise to this appeal arose, the Dastics and the Wilkin-sons owned the two pieces of property on either side of the property in question and on the other side of Riverside, their properties separated by New Hampshire. The Dastics owned the piece of property immediately north of New Hampshire, having purchased it on September 4, 1996.[2] The Wilkinsons owned the piece of property south of New Hampshire and that property had been held by their family since 1958. Both the Dastics and the Wilkin-sons paid taxes as waterfront homeowners.
When the Dastics closed on their property, they learned that there was a “discrepancy” as to who owned the property that is the subject of this appeal, and upon investigation learned that the Herrons were paying taxes on it.[3] In October 1996, the Dastics entered into an agreement with the Wilkinsons reflecting their understanding that each of them owned half of the property in question, the half abutting their respective properties. On November 1. 1996, the Dastics and the Wilkinsons paid the taxes on the property that the tax collector had assessed to the Herrons per their application in 1989. The Dastics and Wilkinsons then notified the Herrons of this payment; the Herrons submitted pay *187 ment of the same taxes on November 27, which was also accepted by the tax collector.
The Wilkinsons and Dastics sued the Herrons and the city of Edgewater, seeking to’ quiet title to the property in their favor and recover damages. The Herrons filed their answer, affirmative defenses, and counterclaim; in their counterclaim, they sought to quiet title in themselves pursuant to Section 95.18, Florida Statutes. On July 1, the city answered and asserted no interest in the property other than its sidewalk.
The Dastics and Wilkinsons moved for summary judgment on the Herrons’ counterclaim, contending solely that Appellees had paid the 1996 property taxes before the Herrons “attempted to pay those taxes.” The Herrons opposed the motion, filing affidavits of Mr. Herron and his attorney which stated that Mr. Herron paid the 1996 taxes and had paid the taxes for seven years pursuant to Section 95.18, Florida Statutes. The trial court granted the motion because “the tax collector should not have accepted the property tax money from Herron since Dastic and Wilkinson [had] previously paid [the taxes].” The Herrons’ appeal of this decision was dismissed as premature by this Court.
The Herrons moved for summary judgment on the Appellees’ complaint and the trial court denied that motion on February 20, 1998, suggesting that the case did not lend itself to summary judgment because of the conflicts in title documents and various maps and plats of the property and its surrounding area. The Wilkinsons and Dastics then filed a motion for summary final judgment on their complaint in their favor which the trial court granted. The court reasserted that the Herrons had no claim to this property because of the court’s earlier decision on their counterclaim. The trial court also decided that the Wilkinsons and Dastics owned the land under New Hampshire and that this conferred ownership to them of the land in question. The Herrons’ timely appealed this decision.
It is the decision underlying the first summary judgment, regarding appellants’ attempt at adverse possession, that is our initial and, as it turns out, disposi-tive concern. In that first summary judgment, the trial court decided that:
The Plaintiffs paid the property tax for 1996 prior to the Defendant.
[[Image here]]
Thus, the tax collector should not have accepted the property tax money from Herron, since Dastic and Wilkinson previously paid.
The adverse possessor must pay all the property taxes for the seven year period following their initial occupation, [citation omitted]. In this case, both the Plaintiffs and Defendant paid property tax on the same plot of land for . the year of 1996. However, the Plaintiffs made the tax payment on the property this year, prior to the Defendant. Receipts provided by Astrid De Parry and Charles Herron reveal that the Vo-lusia Department of Revenue accepted payments by both the Plaintiffs and Defendant. According to the Attorney General, “the tax collector is limited to collection of taxes and the first person to make a lawful tender or payment which is accepted, would satisfy those statutory duties. The tax collector should therefore refuse to accept any subsequent tender of payment.” Op. Att’y Gen.Fla. 71-214 (1971).
Although the quote from the Attorney General’s opinion appears persuasive and on point, taken in context of the full opinion it is clear that the quote has no application to the instant case. That opinion focuses on the case where more than one party is ■ listed on the tax roll for the property. That is not the case here; in the instant case, the tax rolls do not reflect the appellees’ names — only the appellants’ names are on the tax roll for the property *188 in question.[4] For this reason, the summary judgment on the Herrons’ counterclaim was incorrectly decided and the final summary judgment, since partially predicated on that earlier judgment, was decided incorrectly, as well.
The reviewing court must view every possible inference in favor of the party against whom summary judgment has been rendered. See Besco USA v. Home Savings of America, 675 So.2d 687 (Fla. 5th DCA 1996). On both summary judgment motions, there was enough raised in the record to establish that there were material facts at issue.[5] The trial court recognized this when it denied appellants’ motion for summary judgment, and stated that the case would have to go to trial. The trial court should not have deviated from that path because of this tax issue.[6]
REVERSED and REMANDED.
W. SHARP and HARRIS, JJ., concur.

.The land's official description from the Vo-lusia County Tax Collector:
A portion of Lot 8, Mendells Hawk Park, Section 33, Township 17 South, Range 34 East as recorded in Map Book 3, page 73, Public Records of Volusia County, Florida 11 lying Easterly of Riverside Drive and being particularly described as follows: Commence at the Northeast corner of Lot 16, Block "D", Mendells Subdivision of Hawk Park as per map thereof recorded in Map Book 4, page 122 of the Public Records of Volusia County, Florida; thence N 64° 11' 48” E along the Easterly prolongation of the Northerly line of said Block "D” a distance of 33.23 feet to the Easterly edge of the existing asphalt pavement of South Riverside Drive; thence N 44° 09’ 23” W along the said Easterly edge of the asphalt pavement, a distance of 48.65 feet to the easterly prolongation of the south line of Lot 1, Forster's Subdivision as per map thereof recorded in Map Book 6 page 75 of the Public Records of Volusia County, Florida; thence N 64° 14' 20” E along the easterly prolongation of the south line of said Lot 1, Forster's prolongation of the south line of said Lot 1, Forster’s Subdivision, a distance of 59.43 feet to the approximate mean high water line, a distance of 59.43 feet to the approximate mean high water line of the Westerly bank of the Indian River North; thence S 51° 43' 49” E along said mean high water line, a distance of 5.73 feet; thence S 60° 02’ 48” E along said mean high water line, 39.53 feet; thence S 46° 54’ 44” E along said mean high water line, a distance of 8.89 feet to the easterly prolongation of the said north line of Block "D”; thence S 64° 11’ 48” W, a distance of 72.06 feet to the Point of Beginning. Containing 3,059.59 square feet or 0.07 acre more or less. (R. 29, 32.)

. In fact, a survey of the Dastic property revealed that the Dastics owned a portion of the property on which New Hampshire sits.

. Mr. Dastic conceded that he did not think the property in question was part of the property when he purchased his property in 1996; Mr. Wilkinson conceded that he thought the property was owned by the city.

. Appellees argue that this Court can ignore the context of the quote relied on by the trial court, because " ' ... the first person to make a lawful tender of payment' is not limited to the 'parties' who may be listed on the current tax roll" in the opinion. Appellee misunderstands the opinion, which specifically premises its conclusion on a tax collector who is:
assessing the property in the names of all persons who return the property for taxes, those persons whose ownership is reflected in instruments recorded in the public records of the situs county, and so listing each on the tax roll.

. For instance, it would appear material to know who this property was being assessed to, if anyone, before Appellants surveyed the property and made a return on the subject real property to the property appraiser and started paying taxes on it. It would also be material to know who owned the property at that time, according to the recorded instruments in Volusia County. With this information, the court could determine exactly against whom the appellants were attempting to adversely possess this property. According to the affidavit of appellants’ counsel, the recorded instruments of Volusia County reflect that the Dastics and the Wilkinsons do not have a legitimate claim to the property in question. With this affidavit alone, the Her-rons have raised an issue of material fact precluding summary judgment in favor of quieting title in the Wilkinsons and Da sties, even if the Herrons’ attempt at adverse possession ultimately fails.

.We express no opinion about whether the Herrons can legally meet the other requirements of Section 95.18, because those issues have not been addressed by the trial court.